# United States District Court
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| AZANIA ABEBE, § <br> § <br> *Plaintiff,* § <br> § <br> v. § <br> § <br> YUM! BRANDS, INC. and YUM § <br> RESTAURANT SERVICES GROUP, LLC, § <br> § <br> *Defendants.* § | Civil Action No. 4:23-cv-682 <br> Judge Mazzant |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendants Yum! Brands, Inc. and Yum Restaurant Service Group, LLC's Amended and Opposed Motion to Compel Arbitration and to Stay Litigation (Dkt. #13). Having considered the relevant pleadings, the Court hereby **ORDERS** that Defendants' Motion is **DENIED without prejudice**.

Additionally, pending before the Court is Plaintiff Azania Abebe's Motion to Stay Deadline to Respond to Defendants' Motion to Compel Arbitration and, in the Alternative, Abebe's Response to Defendants' Motion to Compel Arbitration (Dkt. #18). Having considered the relevant pleadings, the Court hereby **ORDERS** that Plaintiff's Motion is **GRANTED in part**.

### BACKGROUND

I. **Factual Background**

Azania Abebe ("Abebe") was employed by Defendant Yum Restaurant Services Group, LLC from August 4, 2014, to July 15, 2023 (Dkt. #13 at p. 2). Defendants Yum Restaurant Services Group, LLC and Yum! Brands, Inc. (collectively, "Yum!") allege that Abebe entered into an arbitration agreement ("Arbitration Agreement") with Yum! on October 5, 2015 (Dkt. #13 at p.

2). Though the Arbitration Agreement includes what appears to be Abebe's electronic signature, Abebe maintains that he did not sign the Arbitration Agreement (Dkt. #18 at p. 3). Abebe also "unequivocally den[ies] receiving a copy of the Yum! 2015 Arbitration Agreement during [his] employment" and further states that "Yum! did not notify [him] of the existence of that agreement while [he] worked for Yum!" (Dkt. #20 at pp. 5–6).

Abebe worked in the Yum! Information Technology ("IT") department where he focused on the security of the Yum! IT infrastructure (Dkt. #20 at p. 1). Because of the positions he held within the IT department, Abebe alleges that he has "unique and detailed knowledge about Yum!'s IT infrastructure, how the IT systems were accessed and security issues and risks to Yum's IT infrastructure" (Dkt. #20 at pp. 2–3).

Abebe explains that Yum! used multiple programs for learning management, including SABA Enterprise ("SABA") (Dkt. #20 at p. 3). SABA had a Learning Management System ("LMS") (Dkt. #20 at p. 3). According to Abebe, the SABA LMS had an "impersonation" function (Dkt. #20 at p. 6). This function gave approximately 100 specific users the ability to impersonate others and was "regularly used by support teams, contractors, and training administrators to log in as users to execute LMS commands and even to complete training" (Dkt. #20 at pp. 6–7). Additionally, IT teams could allegedly "impersonate" users in order to trouble shoot problems that employees were experiencing with the various platforms (Dkt. #20 at p. 8).

Further, Abebe alleges that a "backdoor URL was available for administrative access to LMS" (Dkt. #20 at p. 19). According to Abebe, "a backdoor URL is a hidden direct entry into the LMS that bypasses all of the security Yum! has in place" (Dkt. #20 at p. 19). It offers "unrestricted, unmanaged access" to those who know how to access the backdoor (Dkt. #20 at p. 19). Though

this function is generally used for "remote tech purposes," Abebe alleges that this is another means by which someone could have impersonated him (Dkt. #20 at p. 19).

Abebe also alleges that there are security issues with the passwords given to newly hired employees (Dkt. #20 at p. 10). All new employees are given a password that consists of the word "Yum," the last five digits of that employee's social security number, and an "@" sign (Dkt. #20 at p. 10). So if a new employee did not change the assigned password, anyone who knew that employee's social security number could ascertain the password of that employee (Dkt. #20 at p. 11). Moreover, Abebe alleges that passwords are routinely shared on help desk tickets when an employee has an IT issue, and passwords could be shared among employees and contractors (Dkt. #20 at p. 12).

Lastly, Abebe alleges that there were potential issues with data migration that could have impacted the accuracy of Yum!'s data with respect to the Arbitration Agreement (Dkt. #20 at p. 16).

Despite Abebe's allegations, Yum! submits that Abebe was in fact notified of the Arbitration Agreement via "(1) multiple, general announcements sent to all Yum! employees, including Abebe, regarding the rollout and deadlines for the 2015 Compliance Period training, which included the Arbitration Agreement among the required 'courses' []; (2) an email sent directly and individually to Abebe from a Yum! Legal Assistant on July 15, 2015, directing him to 'complete your 2015 compliance training courses' by Friday, July 17, 2015, including the "Yum! 2015 Yum Arbitration Agreement (non-CA)" []; (3) an email sent directly to Abebe via a blind copy on August 3, 2015, asking him to complete 'the following courses . . . for the 2015 Compliance Training Window' and specifically listing the Arbitration Agreement []; and (4) an email directly

3

to Abebe on September 23, 2015, stating the 2015 Compliance Period training 'courses,' and specifically referencing the Arbitration Agreement, 'are part of our corporate compliance program and are required to be completed[]'" [] (Dkt. #25 at pp. 7–8).

Moreover, Yum! alleges that "on October 1, 2015, two different Yum! employees emailed Abebe directing him to log into [SABA] to complete 'the mandatory annual Yum! Brands Code of Conduct Questionnaire ["COCQ"] . . . by the end of day next Tuesday, October 6th,' and to also complete 'any other Compliance Training Courses immediately.' [] On October 5, 2015, at 11:15 a.m., Abebe responded, stating that he would complete his COCQ 'by tomorrow.' [] An hour and a half later, at 12:48 p.m., the COCQ was completed in Abebe's [SABA] account. [] Six minutes later, at 12:54 p.m., Abebe confirmed he had completed the COCQ. [] Four minutes later, at 12:58 p.m., the Arbitration Agreement, which was in the same set of 2015 Compliance Period training materials, was executed in Abebe's [SABA] account. [] Three days later, the same Yum! employees reminded Abebe that he still had four more 2015 Compliance Period trainings to complete—but notably, the Arbitration Agreement was not one of them. []" (Dkt. #25 at p. 9).

Additionally, Yum! alleges that it implements "robust" security procedures to verify that the electronic signature on the Arbitration Agreement was made by Abebe (Dkt. #13 at p. 7). Those security measures include: "(1) requiring personal identifying information to establish access to Yum! systems; (2) assigning a unique identifier to Yum! employees and then tying that identifier to the employee's actions; (3) maintaining a system for tracking employees' electronic signatures; (4) requiring employees to follow certain steps to create electronic signatures; and (5) creating timestamps showing when users completed certain actions" (Dkt. #13 at p. 7).

More specifically, Yum! provides a detailed account of its alleged policy and procedure for employee passwords (Dkt. #13 at p. 8). Upon hire, employees are assigned a Network ID and a temporary default password consisting of the word "Yum", the last 5 digits of the employee's social security number, and the "@" symbol (Dkt. #13 at p. 8). Yum!'s policy requires that employees change this default password as soon as possible, and employees are prompted to do so when they log in for the first time (Dkt. #13 at p. 8). Yum! requires employee passwords to be "at least 7 characters long, and include one upper case letter, one base number, and one special character (e.g., ! @ # $ % ^ & * ( ) - _ = + . /)" (Dkt. #13 at p. 8). Yum! alleges that this password remains confidential, and an employee would only be asked to share it for reasons related to "termination" or a "security investigation" (Dkt. #13 at p. 8).

Yum! also outlines the way its assessment software, Brillium, stored its eLearning training assessments, answers, survey results, and e-signatures in 2015 (Dkt. #13 at p. 9). Yum! used an "AICC integration", which was a content type in eLearning management (Dkt. #13 at p. 9). When an AICC integrated training course was launched, it used an AICC URL to establish a connection between Brillium and SABA (Dkt. #13 at p. 9). These AICC integrated training courses generated a unique identifier known as a "AICC Session ID" for each session so that the learning management software could "locate employee records and [] associate the assessment, answers, survey results, and e-signature with the correct employee" (Dkt. #13 at p. 9). Brillium stored records related to each AICC Session ID (Dkt. #13 at p. 9). For each AICC Session ID, those "records showed the Network ID of the employee who completed the eLearning course (which was auto populated as a result of the employee using his Network ID and unique password to log into the Learning Zone), the AICC URL, the date and time the eLearning course was started, the

5

date and time it was finished, the manually typed name—i.e., electronic signature—of the employee who completed the course (where applicable to a particular course), and the date of the electronic signature (where applicable to a particular course)" (Dkt. #13 at pp. 9–10).

Yum!'s Brillium records indicate that the Arbitration Agreement was accessed using Abebe's Network ID and password on October 5, 2015 (Dkt. #13 at p. 10). That record, containing Abebe's alleged electronic signature, shows that the Arbitration Agreement was completed on October 5, 2015 (Dkt. #13 at p. 10). According to Yum!, "the course could not have been marked as 'completed' without something being typed in the e-signature line" (Dkt. #13 at p. 10). Yum! also notes that Abebe was the only employee to execute an arbitration agreement on October 5, 2015 and "dozens of Yum! employees never signed their [a]rbitration [a]greements at all" (Dkt. #25 at p. 3).

> The Arbitration Agreement includes the following clause:
>
> Because of the delay and expense of the court systems, YUM! Brands, Inc., Yum Restaurants Services Group, Inc., and Yum! Restaurants, Inc. on behalf of itself and its parents and affiliates, officers and directors (collectively, Yum!) and I agree to use confidential and binding arbitration, instead of going to court, for any claims, including any claims now in existence or that may exist in the future (a) that I may have against Yum! and/or its current or former employees or (b) that Yum! may have against me. Without limitation, such claims include any concerning wages, expense reimbursement, compensation, leave, employment (including, but not limited to, any claims concerning harassment, discrimination, or retaliation, conversion, breach of fiduciary duty, and/or termination of employment.

(Dkt. #25-1 at p. 17). The Arbitration Agreement also states that it is governed by the Federal Arbitration Act (Dkt. #25-1 at p. 17).

## II.    Procedural History

On July 26, 2023, Abebe filed the current action, alleging discrimination and retaliation in employment under Title VII, 42, U.S.C. § 1981, and Texas Labor Code Chapter 21 (*See* Dkt. #1).

6

On September 12, 2023, Defendants Yum! Brands, Inc. and Yum Restaurant Service Group, LLC filed their Opposed Motion to Compel Arbitration and to Stay Litigation (Dkt. #13).

On October 3, 2023, Plaintiff Azania Abebe filed his Motion to Stay Deadline to Respond to Defendants' Motion to Compel Arbitration, and in the Alternative, Abebe's Response to Defendants' Motion to Compel Arbitration (Dkt. #18). Specifically, Plaintiff moved to stay his deadline to respond so that he could conduct "targeted discovery" regarding: 1) Yum!'s security procedures; and 2) his contentions that he did not receive notice of the Arbitration Agreement nor did he sign the Arbitration Agreement (Dkt. #18 at pp. 1–2). In the alternative, Abebe moved for a jury trial on the validity of the Arbitration Agreement (Dkt. #18 at p. 2).

On October 24, 2023, Defendants filed their Response in Opposition to Plaintiff's Motion to Stay and for Discovery; or, in the Alternative, Reply in Support of Motion to Compel Arbitration (Dkt. #25). On November 6, 2023, Plaintiff Azania Abebe filed his Reply to Defendants' Response to Motion to Stay Deadline to Respond to Defendants' Motion to Compel Arbitration and, Alternatively, Abebe's Sur-Reply to Defendants' Reply in Support of Motion to Compel Arbitration (Dkt. #34). On November 20, 2023, Defendants filed their Sur-Reply in Opposition to Plaintiff's Motion to Stay and for Discovery (Dkt. #41).

**LEGAL STANDARD**

### I.   Federal Arbitration Act

Under the Federal Arbitration Act ("FAA"), parties to a contract may agree that an arbitrator rather than a court will resolve disputes arising out of the contract. *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 527 (2019). The FAA provides that written agreements to arbitrate controversies arising out of an existing contract "shall be valid, irrevocable, and

enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "The FAA was designed to overrule the judiciary's long-standing refusal to enforce agreements to arbitrate and to place such agreements upon the same footing as other contracts." *Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989) (cleaned up). The FAA establishes "a liberal federal policy favoring arbitration agreements" and "requires courts to enforce agreements to arbitrate according to their terms." *CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 97 (2012).

Although there is a strong federal policy favoring arbitration, it "does not apply to the determination of whether there is a valid agreement to arbitrate between the parties." *Lloyd's Syndicate 457 v. FloaTEC, L.L.C.*, 921 F.3d 508, 516 n. 5 (5th Cir. 2019) (quoting *Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 214 (5th Cir. 2003)). The FAA "does not require parties to arbitrate when they have not agreed to do so." *Volt*, 489 U.S. at 478. Rather, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960). The FAA "simply requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms." *Volt*, 489 U.S. at 478.

When considering a motion to compel arbitration, courts apply a two-step framework. First, the Court must determine "whether the parties entered into any arbitration agreement at all." *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 201 (5th Cir. 2016). "This first step is a question of contract formation only—did the parties form a valid agreement to arbitrate some set of claims." *IQ Prods. Co. v. WD-40 Co.*, 871 F.3d 344, 348 (5th Cir. 2017), *cert. denied*, 138 S. Ct. 2620 (2018). To determine whether there is a valid agreement to arbitrate, courts "apply ordinary

state-law principles that govern the formation of contracts." *Webb v. Investacorp, Inc.*, 89 F.3d 252, 258 (5th Cir. 1996). If the Court finds that there is a valid agreement to arbitrate, it proceeds to the second question: whether the claim at issue is covered by the arbitration agreement. *IQ Prods.*, 871 F.3d at 348. In the second step, the Court must determine "whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims." *Webb*, 89 F.3d at 258 (5th Cir. 1996) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985)). This second question usually is for the Court, unless the arbitration clause contains a valid delegation clause for an arbitrator to determine whether the claim falls within the arbitration agreement. *Kubala*, 830 F.3d at 202.

The party seeking to compel arbitration must prove the existence of an agreement to arbitrate by a preponderance of the evidence. *Grant v. Houser*, 469 F. App'x 310, 315 (5th Cir. 2012). Once the Court determines that there is a valid agreement to arbitrate, the strong federal policy favoring the enforcement of the arbitration agreements applies, and all ambiguities must be resolved in favor of arbitration. *Banc One Acceptance Corp. v. Hill*, 367 F.3d 426, 429 (5th Cir. 2004). As the Supreme Court has stated: "An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986).

## II.     Motion to Compel Arbitration

"While [this] two-step inquiry used to consider a motion to compel arbitration under the FAA is well-settled, the [Fifth] Circuit has never discussed the appropriate standard for a district court to apply when considering a motion to stay or compel arbitration." *Jackson v. Royal Caribbean*

*Cruises, Ltd.*, 389 F. Supp. 3d 431, 443 (N.D. Tex. 2019). However, courts in other circuits apply a summary judgment-like standard. *See Bazemore v. Jefferson Cap. Sys., LLC*, 827 F.3d 1325, 1333 (11th Cir. 2016); *see also Camara v. Mastro's Restaurants, LLC*, 952 F.3d 372, 373 (D.C. Cir. 2020); *Jackson*, 389 F. Supp. 3d at 443.

Under this well-settled standard, summary judgment is proper if "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The substantive law identifies which facts are material. *Anderson*, 477 U.S. at 248.

The movant has the burden to show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Id.* at 247. Therefore, the movant must come forward with evidence that establishes "beyond peradventure all of the essential elements of the claim or defense." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). Once the movant has carried its burden, the nonmovant must "respond to the motion for summary judgment by setting forth particular facts indicating there is a genuine issue for trial." *Byers*, 209 F.3d at 424 (citing *Anderson*, 477 U.S. at 248–49). The nonmovant must adduce affirmative evidence. *Anderson*, 477 U.S. at 257. Though the trial court must resolve all reasonable doubts in favor of the nonmovant, *Casey Enterprises, Inc. v. American Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981), the nonmovant will not satisfy its burden with conclusory allegations or unsubstantiated assertions. *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992).

Under this summary judgment-like framework, a party moving to compel arbitration must "present evidence sufficient to demonstrate an enforceable agreement to arbitrate." *Jackson*, 389

F. Supp. 3d at 443 (citations omitted). The burden then shifts to the nonmovant to raise a genuine issue of material fact as to the existence or validity of an agreement to arbitrate. *Id.* To put an arbitration agreement's "existence 'in issue' for FAA purposes, [the nonmovant] 'must make at least some showing that under prevailing law, [they] would be relieved of [their] contractual obligations to arbitrate if [their] allegations proved to be true and produce some evidence to substantiate [their] factual allegations.'" *Butler v. Z&H Foods, Inc.*, No. 21-20086, 2021 WL 4073110, at *1 (5th Cir. Sept. 7, 2021) (citation omitted). However, "without corroborating evidence, self-serving affidavits will not suffice to entitle the [nonmovant] to a jury trial." *Id.*

## ANALYSIS

**I.  A genuine issue of material fact exists as to the validity of the Arbitration Agreement.**

Yum! moves the Court to compel arbitration of Abebe's claims. Abebe opposes Yum!'s motion to compel on the ground that there is no valid agreement to arbitrate because: 1) he never received notice of the Arbitration Agreement; and 2) he did not sign the Arbitration Agreement Dkt #18 at pp. 1–2). In support, Abebe attaches his sworn declaration (Dkt. #20).

As stated, the Court must first consider whether Yum! has presented evidence sufficient to demonstrate the existence of an enforceable arbitration agreement. "When deciding whether the parties agreed to arbitrate a certain matter [] courts generally [] should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Under Texas law,[1] a binding contract requires: "(1) an offer; (2) an acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; (4) each party's consent

---

[1] Neither party disputes that Texas law is applicable in this case.

to the terms; and (5) execution and delivery of the contract with intent that it be mutual and binding." *In re Capco Energy, Inc.*, 669 F.3d 274, 279–80 (5th Cir. 2012).

### A. Abebe received notice of the Arbitration Agreement.

First, Abebe denies that he received a copy of the Yum! 2015 Arbitration Agreement (Dkt. #20 at p. 21). However, after Yum! submitted copies of emails demonstrating Abebe's receipt of the Arbitration Agreement, Abebe appears to retract his denial (Dkt. #34 at p. 3 ("Abebe clearly did not recall receiving these email notifications since he denied in his Declaration that he had ever received email notification of it.")). Based on the evidence presented by Yum!, the Court finds that there is no genuine issue of material fact that Abebe received notice of the Arbitration Agreement.

### B. Abebe has shown there is a genuine issue of material fact as to whether he electronically signed the Arbitration Agreement.

Yum! has presented the Arbitration Agreement, which includes an electronic signature (Dkt. #25-1 at pp. 16–18). However, Abebe declares in his Declaration that the Arbitration Agreement is not valid because he did not electronically sign the agreement (Dkt. #20 at p. 21).

The Texas Legislature has established that an electronic signature is as valid as a written signature executing an agreement. TEX. BUS. & COM. CODE ANN. § 322.007. An electronic signature is defined as any "electronic sound, symbol, or process attached to or logically associated with a record and executed or adopted by a person with the intent to sign the record." TEX. BUS. & COM. CODE ANN. § 322.002(8). And Texas law provides that an "electronic signature is attributable to a person if it was the act of the person," which "'may be shown in any manner, including a showing of the efficacy of any security procedure applied to determine the person to

which the electronic record or electronic signature was attributable." *Aerotek, Inc. v. Boyd*, 624 S.W.3d 199, 205 (Tex. 2021) (quoting TEX. BUS. & COM. CODE ANN. § 322.009(a)).

In *Aerotek*, the Texas Supreme Court provided additional clarity on electronic transaction security procedures sufficient to establish that an electronic signature is valid. *Id.* The *Aerotek* Court explained that

> security procedures may include requiring personal identifying information—such as a social security number or an address—to register for an account; assigning a unique identifier to a user and then tying that identifier to the user's actions; maintaining a single, secure system for tracking user activities that prevents unauthorized access to electronic records; business rules that require users to complete all steps in a program before moving on or completing it; and timestamps showing when users completed certain actions.

*Id.* at 205–06.

Yum! has submitted evidence establishing that the Arbitration Agreement was distributed to Abebe on the LMS. Yum alleges that Abebe could only access the Arbitration Agreement using his assigned Network ID and his self-created password. Once the Arbitration Agreement was signed, a record was generated showing his Network ID, his name, the start and completion of the Arbitration Agreement course, and a typed signature and date. This record was then stored in Brillium. Pursuant to *Aerotek*, this is sufficient to show that the electronic signature is attributable to Abebe. *See id.*; *see also H-E-B, LP v. Saenz*, No. 01-20-00850-CV, 2021 WL 4733460, at *6 (Tex. App.—Houston [1st Dist.] Oct. 12, 2021, pet. denied) (electronic signature was attributable to employee where employee's assigned unique identification number and password were required to access forms, forms could only be accessed by link sent via email, and signed forms showed employee's unique identification number).

Because Yum! has presented evidence sufficient to demonstrate the existence of an enforceable arbitration agreement, the burden now shifts to Abebe to raise a genuine issue of material fact as to the validity of the agreement. To raise a genuine issue, the party seeking to avoid arbitration "must make at least some showing that under prevailing law, he would be relieved of his contractual obligation to arbitrate if his allegations proved to be true and he must produce at least some evidence to substantiate his factual allegations." *Paradies Shops, L.L.C. v. Bros. Petroleum, L.L.C.*, No. 21-30225, 2022 WL 3134224, at *2 (5th Cir. Aug. 5, 2022) (citations omitted). Abebe submits his Declaration denying that he signed the Arbitration Agreement (Dkt. #20 at p. 21). Moreover, Abebe declares several plausible ways in which his electronic signature could have been forged (*see* Dkt. #20). The Fifth Circuit has held that an affidavit denying the formation of an arbitration agreement raises a genuine issue of material fact. *See Allen v. Vaksman L. Offs., P.C.*, 822 F. App'x 315, 316 (5th Cir. 2020) ("[Plaintiff] has raised an issue of fact, albeit slim, by unequivocally denying, in his (self-serving) affidavit, the formation of an arbitration agreement."). Accordingly, the Court finds that Abebe has raised a genuine issue of material fact as to the validity of the Arbitration Agreement.

II. **Arbitral discovery is warranted, and Abebe has a right to a jury trial on the issue of whether the Arbitration Agreement is valid.**

Abebe moves to stay his deadline to respond to Yum!'s motion to compel arbitration so that he can conduct "targeted discovery" regarding: 1) Yum!'s security procedures; and 2) his contentions that he did not receive notice of the Arbitration Agreement and that he did not sign the Arbitration Agreement (Dkt. #18 at pp. 1–2). In the alternative, Abebe moves for a jury trial on the validity of the Arbitration Agreement (Dkt. #18 at p. 2).

### A. Arbitral discovery is warranted.

The FAA requires "an expeditious and summary hearing, with only restricted inquiry into factual issues." *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 22 (1983). Therefore, "courts have generally denied arbitration-related discovery absent a compelling showing that such discovery is required." *Hudson v. Windows USA, LLC*, No. 3:16CV596-DPJ-FKB, 2016 WL 8135875 (S.D. Miss. Nov. 3, 2016) (citing *Bell v. Koch Foods of Miss., LLC*, No. 3:08cv697-WHB-LRA, 2009 WL 1259054, at *3 (S.D. Miss. May 5, 2009), *aff'd*, 358 Fed. Appx. 498 (5th Cir. 2009).

Additional discovery is necessary here. Abebe has raised a genuine issue of material fact as to whether he signed the Arbitration Agreement. And he has declared plausible ways in which the electronic signature could have been forged. Additional discovery is needed for a thorough evidentiary record. Therefore, Abebe's motion for arbitral discovery should be granted.

### B. Abebe is entitled to a jury trial.

The FAA directs that "[i]f the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof." 9 U.S.C. § 4; *see also Trammell v. AccentCare, Inc.*, 776 F. App'x 208, 211 (5th Cir. 2019) ("A district court must hold a trial on the existence of an arbitration agreement if 'the making of the arbitration agreement ... [is] in issue.'" (citing 9 U.S.C. § 4)). Here, Abebe has requested a jury trial on the validity of the Arbitration Agreement. Because Abebe created a genuine issue of material fact regarding the validity of the Arbitration Agreement, the Court finds that Abebe is entitled to a jury trial under Section 4 of the FAA.

Where a jury trial is warranted, "the proper course is to deny a pending motion to compel arbitration without prejudice to its resubmission on request following the required hearing." *Wisdom v. Experian Info. Sols., Inc.*, No. 4:23-CV-93-ALM-KPJ, 2023 WL 9058868, at *6 (E.D. Tex. Nov. 30, 2023), *report and recommendation adopted*, No. 4:23CV93, 2024 WL 23136 (E.D. Tex. Jan. 2, 2024) (citation omitted).

## CONCLUSION

For the foregoing reasons, it is **ORDERED** that Defendants Yum! Brands, Inc. and Yum Restaurant Service Group, LLC's Amended and Opposed Motion to Compel Arbitration and to Stay Litigation (Dkt. #13) is **DENIED without prejudice**.

It is further **ORDERED** that Plaintiff Azania Abebe's Motion to Stay Deadline to Respond to Defendants' Motion to Compel Arbitration and, in the Alternative, Abebe's Response to Defendants' Motion to Compel Arbitration (Dkt. #18) is **GRANTED in part**.

Specifically, it is **ORDERED** that Azania Abebe is entitled to arbitral discovery and a jury trial regarding the validity of the Arbitration Agreement.

**IT IS SO ORDERED.**

SIGNED this 21st day of August, 2024.

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE